UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 17-CV-22446-ALTONAGA

HERBERT BAUSSIQUOT,

    Plaintiff,

vs.

AKAL SECURITY INC

    Defendant.

_____/

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Plaintiff, HERBERT BAUSSIQUOT ("Plaintiff" or " Mr. Baussiquot"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Local Rule 56.1, submits his statement of Undisputed Material Facts in Support of his Motion for Partial Summary Judgment as follows:

1. Plaintiff was employed by Defendant as an armed police officer from on or about July 1, 2014 until he was terminated on or about November 17, 2016. See Defendant's Answer and Statement of Defenses to Plaintiff's Amended Complaint, ECF No. 15 ¶11, (hereinafter "Defendant's Answer").

2. Defendant employed fifty (50) or more employees within a seventy five (75) mile radius for each working day during each of the twenty (20) or more calendar workweeks in the calendar years during Plaintiff's employment. Defendant's Answer, ECF No. 15 ¶28.

3. Prior to seeking any medical leave, Plaintiff had been employed by Defendant for at least twelve (12) months, and he had worked at least 1,250 hours during those twelve (12) months. Defendant's Answer, ECF No. 15 ¶¶ 26, 27, 29.

4. In 2016, Captain Seymour (hereinafter "Seymour") was one of Plaintiff's supervisor.

1

(Seymour Tr. 42:9-11); (Olmedo Tr. 27:2-5); (Coker Tr. 52:9-16).

5. Seymour had no authority or involvement regarding Plaintiff's FMLA leave. (Seymour Tr. 43:16-44:8).

6. Joseph Olmedo (hereinafter "Olmedo") was the site manager. (Olmedo Tr. 8:1-8). All captains report directly to him. (Olmedo Tr. 9:22-25). He was also a ranking officer four (4) levels above Plaintiff pursuant to the chain of command established by Defendant's employee manual. (Bates DEF 000542-000625 specifically pages 000623-000624. A copy is attached as Exhibit 1. )

7. As a site manager, Olmedo had no duty regarding scheduling, coverage of posts nor did he have to be involved with officers' absences but he was regularly copied on the e-mails for awareness.  See generally Olmedo Tr. 15:3-14:9.

8. Olmedo had no authority nor was he required to be involved in the approving or authorizing FMLA leave absences of officers. Olmedo Tr. 23:23-24:9.

9. On or about June 20, 2016, Plaintiff made a request for intermittent leave beginning on July 7, 2016 because of his mother's serious illness. (Bates DEF 000272-000273. A copy is attached as Exhibit 2).

10. On or about July 17, 2016, Defendant approved Plaintiff's first request for intermittent leave from July 7, 2016 through October 8, 2016. (See Bates DEF 000274. A copy is attached as Exhibit 3).

11. On or about September 2, 2016, Plaintiff made his second request for intermittent leave. (See Bates DEF 000280-000281. A copy is attached as Exhibit 4).

12. On or about October 14, 2016, Defendant sent a letter to Plaintiff approving Plaintiff's second request for intermittent leave from October 1, 2016 through December 31, 2016.

(See Bates DEF 000282. A copy is attached as Exhibit 5).

13. Beginning in July 2016 through September 2016, Plaintiff took approximately forty-four (44) days (one day at a time) of intermittent FMLA leave. (See Bates DEF 000804. A copy is attached as Exhibit 6).

14. Each time Plaintiff needed a day off to assist his mother Plaintiff would call and advised he would be out under FMLA as required by Defendant's policies and procedures. His absence would then be excused. (See Coker Tr. 95:1-13).

15. Since the beginning of September 2016, Olmedo made several inquiries regarding Plaintiff's FMLA absences despite the fact that it was not within his duties. See generally Olmedo Tr. 15:3-14:9, 23:23-24:9; See also Bates DEF 000391, 000400. (A copy is attached as Composite Exhibit 7).

16. On or about September 7, 2016, Olmedo sent an e-mail to his supervisor that Plaintiff's absences were costing the company a lot of overtime. (See Bates DEF 000375. A copy is attached as Exhibit 8).

17. Olmedo claimed that Plaintiff's leave was causing safety concerns. (Olmedo Tr. 39:12-40:17). However, in its interrogatories Defendant stated that during the period of January 1, 2016 to November 30, 2016 "there were nearly 450 detention officers employed at Krome" (See Def. Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 5. A copy is attached as Exhibit 9). Therefore, Plaintiff's FMLA absences were not creating any safety concerns, or disruption on how the facility operated. See also generally Seymour Tr. 57:4-25.

18. As an armed officer, Plaintiff was required to attend a quarterly firearm requalification each quarter. Elias Tr. 20:16-21:1.

19. The firearm requalification training can be scheduled every two (2) weeks or once a month, depending on the operational needs, officers' availability and the availability of the range. *Id*. See also, Seymour Tr. 33:21-22 and 35:20-24.

20. Plaintiff completed the last quarterly requalification on or about June 2016. See Bates DEF 000338. (A copy is attached as Exhibit 10).

21. The schedule for the firearm requalification is created by the training manager. The same is provided to the officer's supervisor and the schedule is posted outside the office. See Elias Tr. 21:2-6; see also generally Seymour Tr. 31:12-35:11.

22. Changes can occur to the schedule. It is the supervisor's responsibility to advise the officers of the changes by posting the changes on the board, calling and/or emailing the officers. See generally Seymour Tr. 31:12-35:11.

23. Captain Seymour was responsible to ensure that the officers are scheduled and attend the training each quarter. See generally Seymour Tr. 31:25-33:22.

24. The Senior Instructor, Marc Elias, receives the final list the day before the training is supposed to take place. Elias Tr. 23:5-23.

25. September 9, 2016, an email was sent by the training manager to Captain Seymour stating that Plaintiff was on the schedule for September 10, 2016. See Bates DEF 000381. (A copy is attached as Exhibit 11).

26. On September 13, 2016, Captain Seymour requested a list of the officers who had not received their training to date. Plaintiff was on that list. See Bates DEF 000383-384. (A copy is attached as Exhibit 12).

27. On September 24, 2016, Plaintiff received a call stating that he was a no call no show for his firearm re-qualification. Plaintiff advised that he was on FMLA leave and was

unaware that he was on the schedule. See Bates DEF 000182-000183. (A copy is attached as Exhibit 13).

28. Plaintiff was never notified that he was scheduled for requalification prior to September 24, 2016. See Exhibit 13. See also Seymour 63:3-66:15; Baussiquot Tr. 183:2-10.

29. Despite being on leave, Plaintiff requested access a few minutes after the starting time to be able to complete his requalification. The same was denied by Captain Seymour. See Exhibit 13. See also Baussiquot Tr. 183:2-10.

30. Defendant's policy stated that "no security officer may be disciplined except by a ranking officer, who is *directly above* that officer" See Exhibit 1 (emphasis added).

31. Despite the Defendant's policy, a Personnel Action Report (PAR) was prepared on September 26, 2016 by Mr. Olmedo suspending Plaintiff for ten (10) days as his removal from the schedule made Defendant incurred "nonsensical overtime at additional cost to the company". See Bates DEF 000227. (A copy is attached as Exhibit 14).

32. On October 4, 2016, Plaintiff was presented with the 9/26/16 PAR and a letter that advise him he was suspended pending the investigation for an alleged firearm violation. Bates DEF 000228. (A copy is attached as Exhibit 15). See Seymour 81:6-8 and 81:24-82:22.

33. On October 11, 2016, a Disciplinary and Termination Request was submitted by Olmedo regarding Plaintiff to the employee relations manager, Josephine Coker. See Bates DEF 000448-000451. (A copy is attached as Exhibit 16).

34. Defendant has a progressive discipline policy in place. Olmedo Tr. 25:5-22.

35. On the Disciplinary and Termination Request, Olmedo requests Plaintiff to be terminated for insubordination and an alleged firearms safety violation based on an alleged investigation that he organized and was a part of. *Id*.

36. The request for termination is not compliant with the policies that Defendant has in place. Specifically, insubordination as a first time offense is not a reason for termination. See Bates DEF 000250-257. (A copy is attached as Exhibit 17). Furthermore, the alleged misuse if the firearm although it may lead to termination is not a must and therefore it is left to the discretion of the supervisor, in this case, Mr. Olmedo. *Id*.

37. Other employees, including Captain Seymour, have committed offenses that involved the misuse of weapons or credentials. Nevertheless, they were not terminated on their first offense. See Seymour Tr. 121:7-122:7.

38. Coker recommended termination of Plaintiff based on the reports provided by Olmedo. See generally Coker Tr. 74:4-87:15, 89:13-25; 96:2297:14.

39. Based upon the recommendation and without further investigation, Carol Frost gave the approval to terminate Plaintiff. See Coker 89:13-19.

40. The termination letter was prepared and electronically signed on behalf of frost by Coker. See Coker Tr. 99:6-25. See Bates DEF 000201. (A copy is attached as Exhibit 18).

41. An independent review of the evidence was not conducted by Coker or by Frost. See generally Coker Tr. 74:4-87:15, 89:13-25; 96:2297:14.

Dated: February 6, 2018.                    Respectfully Submitted,

*/s/ Nathaly Lewis*
Peter M. Hoogerwoerd, Esq.
Florida Bar No.: 0188239
pmh@rgpattorneys.com
Nathaly Lewis, Esq.
Florida Bar No.: 118315
nl@rgpattorneys.com
**REMER & GEORGES-PIERRE, PLLC**
44 West Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305) 416-5000

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 6, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/S/Nathaly Lewis_____
NATHALY LEWIS, ESQ.

## **SERVICE LIST**

Peter Michael Hoogerwoerd, Esq.
Florida Bar No. 188239
Email: pmh@rgpattorneys.com
Nathaly Lewis, Esq.
Florida Bar No. 118315
Email: nl@rgpattorneys.com
**REMER & GEORGES-PIERRE, PLLC**
44 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 416-5000
Facsimile: (305) 416-5005

Counsel for Plaintiff


Jason D. Berkowitz, Esq.
E-mail: jason.berkowitz@jacksonlewis.com
Florida Bar No. 0055414
Daniel J. Butler, Esq.
E-mail: daniel.butler@jacksonlewis.com
Florida Bar No. 111398
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-577-7600
Facsimile: 305-373-4466

Attorneys for Akal Security, Inc